IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EMON V. HOLLINS,

          Plaintiff,

v.                                                            OPINION and ORDER

DANE COUNTY, JAY LINDEMANN,                        23-cv-427-jdp
and THAI VANG,

          Defendants.

---

Plaintiff Emon Hollins, proceeding without counsel, alleges that he was housed at the Dane County Jail in a cell smelling strongly of feces and urine, causing him to suffer various physical problems. I granted him leave to proceed on Eighth Amendment claims against defendant Deputies Jay Lindemann and Thai Vang and against Dane County under *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978).

Defendants move for summary judgment. Dkt. 31. I will grant that motion because Hollins fails to show either that the conditions of his confinement were serious enough to violate the Eighth Amendment or that defendants disregarded the problem. I will dismiss the case.[1]

UNDISPUTED FACTS

I draw the following facts from the parties' proposed findings of fact and supporting evidence. These facts are undisputed unless otherwise noted.

---

[1] Defendants sought a four-day extension of their deadline to file their reply supporting their summary judgment motion. Dkt. 44. I will grant that motion and I will consider their reply materials.

Plaintiff Emon Hollins was transferred to the Dane County Jail on October 6, 2017, from the Wisconsin prison system so that he could attend hearings in a criminal case. Defendants Thai Vang and Jay Lindemann were deputies at the jail.

Non-defendant personnel assigned Hollins to Cell B in Unit 603. There were eight cells on that unit, each equipped with its own toilet and sink. Two days prior to Hollins's stay at the jail, the toilet in Cell H had overflowed. Staff closed that cell, placed a bag over the toilet, shut off the water to the cell, and submitted a work order for maintenance to fix the toilet.

Defendant Vang escorted Hollins to Cell B. Hollins could smell urine and feces on the unit and he asked Vang if he could be placed in a different housing unit. Vang denied that request; Hollins said that Vang told him that "it would be pointless because the entire jail stinks." Dkt. 43, ¶ 4. The parties dispute whether Vang told Hollins that he could file a grievance seeking to be moved.

Hollins states that shortly after arriving at his cell he began to develop a headache, dizzy spells, and nausea from the smell.[2] He also had trouble sleeping.

The next morning, deputies provided all inmates in the unit cleaning supplies to clean their cells and the dayroom area. Hollins and other inmates cleaned their cells, toilets, and the dayroom area, but it didn't alleviate the smell. I take the parties to be saying that Cell H was not cleaned. Hollins told multiple staff members, including defendants Vang and Lindemann

---

[2] Defendants challenge some of Hollins's statements made in his declaration, Dkt. 43, as inconsistent with his deposition testimony, at which he expressed difficulty remembering events in precise detail, Dkt. 38. But memory lapses are generally an exception to the "sham affidavit" rule, *see, e.g.*, *Cook v. O'Neill*, 803 F.3d 296, 298 (7th Cir. 2015), so I won't disregard any of Hollins's declaration on that basis.

as well as medical staff, about the smell and the symptoms he was suffering, and he stated that Cell H should be power washed and bleached.

The following day, Hollins again raised his concerns to Lindemann, who told him that he couldn't move him. Lindemann gave Hollins a grievance form. Hollins gave his grievance to Lindemann the next day; Lindemann forwarded it to the supervisor who reviewed grievances.

Hollins was transferred out of the jail on October 13, 2017, after about a week at the jail. The supervisors reviewing Hollins's grievance responded on October 20, 2017, ruling that the grievance was "substantiated," and that "[t]here have been numerous plumbing issues throughout the City/County Building which have been causing unusual odors. Maintenance has been working on the issue." Dkt. 34-1, at 2.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Hollins contends that defendants violated his Eighth Amendment right against cruel and unusual punishment by consciously disregarding the conditions of his confinement. Under the Eighth Amendment, prisoners are guaranteed humane conditions of confinement for their health and safety. *Rice ex rel. Rice v. Corr. Med. Serv's*, 675 F.3d 650, 664 (7th Cir. 2012) ("Incarcerated persons are entitled to confinement under humane conditions which provide for their 'basic human needs.'"). For example, prisoners must receive adequate food, clothing, and shelter, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), including sanitary conditions of confinement, *see, e.g.*, *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("exposure to human waste carries particular weight in the conditions calculus"); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) ("courts have been especially cautious about condoning conditions

3

that include an inmate's proximity to human waste"). To prevail on a conditions-of-confinement claim, a prisoner must prove two things: (1) the adverse condition is sufficiently serious; and (2) the prison official consciously disregarded that condition. *Rice*, 675 F.3d at 664–65. The parties dispute both elements.

For an adverse condition to be sufficiently serious, it must be "extreme," *Hudson v. McMillian*, 503 U.S. 1, 9 (1992), and it must deprive the prisoner of a "minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834. Hollins states that he was forced to live in unsanitary conditions—the foul smell from another cell in his unit—for about a week, and that the smell was bad enough to make him dizzy and nauseous, give him headaches, and cause him trouble sleeping.

Defendants contend that the conditions at the jail weren't extreme enough to violate the Eighth Amendment, citing cases such as *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) ("A single clogged toilet does not violate the Constitution."), and *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008) (foul odor coming from the plumbing not enough to support conditions-of-confinement claim). But the degree of suffering by the plaintiff is evidence of the severity of the conditions, and courts—including this court in a previous case brought by Hollins—have concluded that under certain circumstances foul odors and inadequate ventilation can violate the Eighth Amendment. *See, e.g.*, *Board v. Farnham*, 394 F.3d 469, 473 (7th Cir. 2005) (prisoners suffered severe nosebleeds and respiratory problems from toxic mold in air ducts); *Hollins v. Waller*, No. 17-cv-757-jdp, 2019 WL 5864897, at *3 (W.D. Wis. Nov. 8, 2019) ("Hollins says that the odor [at Waupun Correctional Institution] made him dizzy, gave him headaches, and caused him to have trouble sleeping, which goes well beyond mere unpleasantness and makes this case closer to *Board* than *Sain*.").

4

Hollins's symptoms here are less severe than he suffered in his '757 case—he was at the Dane County Jail for only seven days, compared to a 46-day stint in the offending conditions in the '757 case, and he conceded in his deposition that he was still capable of "socializing and doing normal activities." Dkt. 38, at 54:21–22; *see also Hutto v. Finney*, 437 U.S. 678, 686–87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (duration of conditions relevant to Eighth Amendment analysis). The Eighth Amendment doesn't protect prisoners from every discomfort; no reasonable jury could conclude that the conditions facing Hollins were serious enough to violate the Eighth Amendment.

Even if I concluded that the conditions were serious enough to violate the Eighth Amendment, Hollins would need to show that Lindemann and Vang were aware of the problem and consciously disregarded it. *Rice*, 675 F.3d at 665. Hollins states that he told both Lindemann and Vang about the odor problem but they did not move him. Defendants state that they didn't have the authority to move Hollins to a different cell on their own. Hollins disputes this, stating that he knew from previous stints at the jail that deputies could move inmates without authorization. This dispute isn't material because even if defendants didn't have the authority to move inmates they could have spoken to a supervisor who did have the authority.

Nonetheless, I conclude that no reasonable jury could conclude that defendants consciously disregarded Hollins's problem given the other procedures in place for inmates to address plumbing and medical issues. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights . . . . Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's

5

job."). The underlying plumbing problem was already being addressed: staff had placed a work order to fix the plumbing problem in Cell H and they distributed supplies to clean the rest of the unit. And it is undisputed that there were other avenues for Hollins to raise his medical issues to jail officials: he spoke with medical staff about his health problems and in his deposition he suggests that he received Tylenol to treat his headaches. When Hollins decided to file a formal grievance, defendant Lindemann gave him a grievance form and then forwarded the completed form to the appropriate supervisor. Defendants did not violate the Eighth Amendment by having Hollins use these other procedures to handle the problem.

Hollins contends that defendants' conscious disregard is shown by their refusal to follow internal jail rules and Wis. Stat. § 302.37 ("maintenance of jail and care of prisoners") and he suggests that they should have power washed and bleached the unit. But those jail rules contain only vague statements about officials keeping the jail sanitary; they do not mandate specific cleaning procedures. And in any event, a violation of jail rules does not itself violate the Constitution. *Langston v. Peters*, 100 F.3d 1235, 1238 (7th Cir. 1996). Because Hollins fails to meet either element of his Eighth Amendment claims against defendants Vang and Lindemann, I will grant defendants' motion for summary judgment concerning these defendants.[3]

I also granted Hollins leave to proceed on a claim directly against Dane County on a claim for municipal liability under *Monell*. Municipalities can be sued under this theory if the plaintiff alleges that he was harmed by a county policy or practice or by an official with final policymaking authority. *See, e.g., Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

---

[3] The individual defendants also contend that they are entitled to qualified immunity on Hollins's Eighth Amendment claims. Because I am dismissing Hollins's claims on the merits, I need not consider defendants' qualified immunity arguments.

But I have already concluded that the conditions at the jail weren't serious enough to violate the Eighth Amendment. And in any event, Hollins doesn't submit evidence showing that he was harmed because of a county policy or practice or by an official with final policymaking authority. At best, he has shown only a single instance of prison staff failing to clean a dirty cell promptly, which isn't enough to satisfy a claim for *Monell* liability. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) ("In applying *Monell* and avoiding respondeat superior liability, one key is to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices."). I will grant summary judgment to defendants on this claim, and the entire lawsuit will be dismissed.

ORDER

IT IS ORDERED that:

1. Defendants' motion for extension of time, Dkt. 44, is GRANTED.

2. Defendants' motion for summary judgment, Dkt. 31, is GRANTED.

3. The clerk of court is directed to enter judgment and close this case.

Entered December 12, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge